Filed 12/10/20  P. v. Cheatham CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B294173 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA096910) |
| v. | |
| SHANAY CHEATHAM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Amy N. Carter, Judge.  Reversed and remanded with direction.

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

During deliberations in the trial of Shanay Cheatham for assault, the trial court dismissed a juror for misconduct and replaced him with an alternate. The reconstituted jury found Cheatham guilty as charged. On appeal, Cheatham contends, among other things, that the trial court erred by discharging the juror. We agree and reverse the judgment.[1]

## BACKGROUND

### I. The assaults

The evidence at trial was that Bong Thi Truong and Kevin Tran were working at a nail salon. Cheatham asked Tran to fix her nails, asserting that he had done them incorrectly the week before. When he refused, they argued. Tran tried to call the police, but Cheatham grabbed the phone and threw it. Cheatham punched Tran and grabbed Troung by the hair, pushing her face against the wall. In her defense, Cheatham admitted punching Tran because she felt threatened when he walked towards her, waving his hands and yelling. Cheatham denied grabbing Troung by the hair or pushing her against a wall.

### II. Jury deliberations

Before the jury retired for deliberations late on September 19, 2018, the trial court instructed jurors not to talk about the case with anyone, including their "spouse or other family or friends," and not to discuss deliberations with anyone. The next day, after a full day of deliberations, the trial court was informed that Juror No. 3, while standing near the public elevator, had been overheard telling someone on his cell phone that the jury

---

[1] Because we reverse on this ground, we need not reach her other arguments.

2

was definitely going to hang. The next morning, the trial court asked Juror No. 3 about the incident. The juror said his wife had asked if he was coming home, and he replied that it looked like a hung jury.[2]

The trial court then asked the other jurors in numerical order whether they had overheard any conversation that would impact their ability to be fair and impartial. Only Jurors Nos. 11 and 12 overheard the comment. Both said it would not interfere with their ability to be fair and impartial.

However, while being asked about the call, Juror No. 4 volunteered that there was "a lot of dissension in the room" and called Juror No. 3 an "obstructionist," meaning he had a closed mind and was challenging others in a way that shut down conversation and the deliberative process. Juror No. 3 seemed to be carrying a grudge and had said, "This is crazy. This is not worth doing" and these "people are never going to change their mind. It's over with. Let's go." Juror No. 4 clarified that what was happening was more akin to a difference of opinion than a refusal to deliberate.

Juror No. 5 said that before they had gone through the deliberation process, Juror No. 3 appeared to have made up his mind and was in a rush to finish. Juror No. 3 cut others off and did not give others with a different opinion a chance to speak.

Juror No. 6 agreed that Juror No. 3 had expressed a strong opinion about the verdict before the deliberative process had taken place. Juror No. 3 also sat on the couch rather than at the

---

[2] Juror No. 3 also told the trial court that due to an out-of-state work commitment he would not attend deliberations if they went into the next week.

table with the rest of the jurors. Still, Juror No. 3 expressed his thoughts and ideas. Juror No. 6 would not say that Juror No. 3 was refusing to deliberate but instead was contributing to the conversation.

Juror No. 7 had seen nothing from Juror No. 3 constituting a refusal to deliberate or to indicate he had made up his mind before the deliberative process began.

According to Juror No. 8, Juror No. 3 stated he had made up his mind before entering the jury room. Juror No. 3 initially resisted deliberating but became more willing to participate as the day progressed. Although Juror No. 3 talked over others, he was not preventing meaningful discussion.

Juror No. 9 agreed that Juror No. 3 said he had made up his mind during deliberations. Although Juror No. 3 talked over others, he did not interfere with others' ability to participate.

Juror No. 10 reported that Juror No. 3 said he had made up his mind before leaving the courtroom and would not deliberate. Juror No. 3 felt like race was playing a factor and insinuated that Black jurors would vote one way and the others another way. Juror No. 3 also talked about another case in which he had been a juror and how he felt that certain jurors should not be part of the process. His behavior made Juror No. 10 uncomfortable, interfering with others' ability to participate in his view. At the end of the day, Juror No. 3 got up from the table, sat on the sofa, and said he would not participate.

Juror No. 11 said that Juror No. 3 was rushing the process, told others to hurry up, and said that he had already formed an opinion and so should they. He interfered with others' ability to participate by interrupting. This behavior notwithstanding, Juror No. 11 did not feel less able to participate. Although others

4

were frustrated and briefly shut down, they would then continue deliberating.

Juror No. 12 said that Juror No. 3 stood to the side and interjected from time to time but had not impeded anyone from deliberating and had not refused to participate. When Juror No. 3 commented that minds could not be changed, others explained that they were just discussing the facts.

When the questioning of the jurors concluded, the prosecutor argued that Juror No. 3 should be dismissed, and defense counsel argued that he should remain on the jury. The trial court discharged Juror No. 3 and replaced him with an alternate. In excusing the juror, the trial court referred to Juror No. 10, who said that Juror No. 3's behavior made her uncomfortable and less able to participate. Juror No. 3 brought race into the discussions and had said that certain jurors should not be part of the process. To the trial court, it appeared that Juror No. 3 tried to interfere with the deliberative process and to suppress the free exchange of ideas. He had separated himself by sitting apart from the other jurors. Further, by telling his wife that the jury would hang, Juror No. 3 violated the trial court's instruction not to discuss the case with anyone.

The trial court concluded, "So overall this juror has ignored the court's instructions, has made every [effort] to suppress the participation in deliberations of other jurors, has brought into the deliberation process a case that he sat on from some other jury. [¶] And I find that all of these things taken together rise to the level of jury misconduct and this court can have no confidence that this juror will follow instructions and participate appropriately without suppressing the other juror's ability to participate in the deliberative process."

5

The trial court discharged Juror No. 3 and replaced him with an alternate.

The reconstituted jury found Cheatham guilty of assault with force likely to produce great bodily injury to Tran and Troung (Pen. Code,[3] § 245, subd. (a)(4); counts 1 & 2). The jury found the great bodily injury enhancement under section 12022.7, subdivision (a) true as to count 1. On November 5, 2018, the trial court sentenced Cheatham to three years on count 1, stayed the section 12022.7 enhancement, and imposed a concurrent sentence on count 2.

## DISCUSSION

A court has the discretion to discharge a juror who is unable to perform his duty or upon other good cause shown. (§ 1089; *People v. Peterson* (2020) 10 Cal.5th 409, 472.) Failing to follow the trial court's instructions is grounds for dismissal. (*People v. Williams* (2015) 61 Cal.4th 1244, 1262.) Refusing to deliberate is also grounds for dismissal. (*People v. Cleveland* (2001) 25 Cal.4th 466, 475.) "Examples of refusal to deliberate include, but are not limited to, expressing a fixed conclusion at the beginning of deliberations and refusing to consider other points of view, refusing to speak to other jurors, and attempting to separate oneself physically from the remainder of the jury." (*Id.* at p. 485.) However, a juror's faulty logic, disagreement about how the law should be applied to the facts, and how deliberations should be conducted are not grounds for discharge. (*Ibid.*) Not deliberating well is an inadequate basis to remove a juror for failure to deliberate. (*Shanks v. Department of*

---

[3] All further statutory references are to the Penal Code.

*Transportation* (2017) 9 Cal.App.5th 543, 555.) A juror who participates in deliberations for a reasonable period of time may not be discharged for refusing to deliberate simply because the juror states that further discussion will not alter the juror's views. (*Cleveland*, at p. 485.)

When reviewing a trial court's decision to discharge a juror for misconduct, we accept the trial court's findings on credibility and historical facts if supported by substantial evidence. (*People v. Peterson, supra*, 10 Cal.5th at p. 472.) "We will uphold the trial court's decision if the record supports the basis for that decision as a ' "demonstrable reality." ' " (*Ibid.*) This more stringent standard of review means that the record must reveal the reason for the decision, and substantial evidence must support that reason. (*Id.* at pp. 472–473; accord, *People v. Armstrong* (2016) 1 Cal.5th 432, 450–451.) "That heightened standard more fully reflects an appellate court's obligation to protect a defendant's fundamental rights to due process and to a fair trial by an unbiased jury." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.) Credibility determinations, however, are within the trial court's purview and will not be reweighed on appeal, as a trial court's firsthand observations are unavailable on appeal. (*Id.* at p. 1053.)

The trial court here relied on a combination of factors in finding good cause to discharge Juror No. 3. The first factor was that Juror No. 3 was trying to suppress the deliberative process. However, the record does not support that factor as a

demonstrable reality.  Of the nine jurors[4] asked about Juror No. 3's behavior during deliberations, seven said he was deliberating and not preventing others from deliberating.  Even Juror No. 4, who first raised Juror No.'s 3's behavior, conceded he was not refusing to deliberate, even if he did so in an unpleasant manner, and characterized what was happening as a difference of opinion rather than a refusal to deliberate.

In reaching its conclusion that Juror No. 3 was trying to suppress the deliberative process, the trial court relied heavily on Juror No. 10's testimony.  When asked how Juror No. 3 was impeding the deliberative process, Juror No. 10 referred to Juror No. 3's statement that race might play a factor.  By this, Juror No. 10 felt he was insinuating that Black jurors would vote one way and the others another way.  Although the statement is concerning, it is also vague.  Was Juror No. 3 saying race played a factor in the crime and/or in deliberations or did the juror mean something else?  Juror No. 10's view was that Juror No. 3 was insinuating that people would vote according to their race.  While this appears to be Juror No. 10's opinion about what Juror No. 3 meant, a trial court must be wary of relying on a juror's opinions rather than the objective facts and its consideration of the juror's conduct.  (*People v. Allen and Johnson* (2011) 53 Cal.4th 60, 75.)  Even if Juror No. 3 was implying that jurors would vote according to their race, it is not clear that this amounts to misconduct.  If there was a clearer showing that Juror No. 3, for example, made a credibility determination based on racial bias,

---

[4] Jurors Nos. 1, 2, and 3 were not asked about this issue.  Although it may not always be necessary to question all jurors, the better practice here would have been to do so.

then misconduct might be established. But the comments Juror No. 10 attributed to Juror No. 3 are insufficient to show that as a demonstrable reality.

Similarly, the other comments Juror No. 3 made about another case in which he had been a juror are too vague to show misconduct as a demonstrable reality. According to Juror No. 10, Juror No. 3 referred to this other case as "an example of how things are different" and "how certain jurors that he felt shouldn't be a part of the process." It is unclear what point Juror No. 3 was making by referring to the other case and whether he was talking about jurors in that case or in this one. Without more, it is hard to conclude that this comment gives rise to misconduct as a demonstrable reality.

Still, Juror No. 3's behavior clearly was off-putting to fellow jurors. He was difficult, rude, and disrespectful. But such behavior is not automatically a ground to remove a juror. (See, e.g., *People v. Bradford* (1997) 15 Cal.4th 1229, 1332 [stating opinions in manner upsetting to other jurors not misconduct]; *People v. Keenan* (1988) 46 Cal.3d 478, 541 [harsh, inappropriate outbursts not misconduct warranting setting aside penalty verdict].) Rigorous, even heated, debate is common in deliberations. (*People v. Johnson* (1992) 3 Cal.4th 1183, 1255.) Some jurors may be impervious to such stress, others susceptible to it. While Juror No. 10 and perhaps Juror No. 11 felt inhibited by Juror No. 3's behavior, the record is insufficient to show that Juror No. 3 impeded the deliberative process or refused to participate in it.

As another factor in its decision to discharge Juror No. 3, the trial court said that Juror No. 3 separated himself from the others by sitting on the couch or standing off to the side. While

9

physically separating oneself from fellow jurors can be a sign of a refusal to deliberate (*People v. Cleveland*, *supra*, 25 Cal.4th at p. 485), it is unclear whether Juror No. 3 did so as a refusal to deliberate *or* to indicate that further deliberations would not change his mind. In fact, Juror No. 6 said that although Juror No. 3 sat on the couch rather than at the table with the other jurors, Juror No. 3 still communicated his views and contributed to the conversation. Juror No. 12 said that although Juror No. 3 stood to the side sometimes, Juror No. 3 still interjected with ideas. Only Juror No. 10 said that Juror No. 3 got up from the table, sat on the sofa, and said he would not participate. But Juror No. 3 did this at the end of a full day of deliberations. It was therefore not clear that Juror No. 3 was merely indicating that further discussion would not change his mind. Where a juror participates in deliberations for a reasonable time and then stops because he believes that further discussion will not alter his views, it is improper to dismiss the juror. (See, e.g., *People v. Armstrong*, *supra*, 1 Cal.5th at p. 453; *Cleveland*, at p. 485; *People v. Bowers* (2001) 87 Cal.App.4th 722.)

Juror No. 3 did state his opinion about the verdict at the outset of deliberations even though the trial court had instructed that stating opinions "too strongly at the beginning or immediately announcing how you plan to vote may interfere with an open discussion." However, the reality of human nature is a juror may hold an opinion at the outset of deliberations. (*People v. Allen and Johnson*, *supra*, 53 Cal.4th at p. 75.) "A juror who holds a preliminary view that a party's case is weak does not violate the court's instructions so long as his or her mind remains open to a fair consideration of the evidence, instructions, and shared opinions expressed during deliberations." (*Id.* at p. 73.)

10

Juror No 3 may have had strong opinions at the outset of deliberations and never changed his mind, but he did participate in discussions.

In this respect, *People v. Bowers*, *supra*, 87 Cal.App.4th 722 is on point. In that case, the trial court received a report that Juror No. 4 was not deliberating. (*Id.* at p. 725.) Jurors disagreed about the degree of Juror No. 4's participation. Many agreed he had participated in deliberations but had just made a decision from which he would not be swayed. At times, Juror No. 4 was inattentive and unresponsive to questions. Juror No. 4 himself said he had participated in discussions but was simply unwilling to go along with the majority. The trial court found that Juror No. 4 did not enter into meaningful deliberations and had made up his mind after hearing the first witness testify. (*Id.* at pp. 727–728.) The appellate court found it was error to discharge Juror No. 4. While there was evidence, he was inattentive at times and did not participate as fully as others, "this conduct was a manifestation, effectively communicated to the other jurors, that he did not agree with their evaluation of the evidence." (*Id.* at p. 730.) Similarly here, almost all jurors agreed that Juror No. 3 participated in deliberations but merely refused to change his mind.

Nor can we find that the other reason the trial court cited for discharging Juror No. 3—he violated the trial court's order not to talk about the case—provided a sufficient ground to discharge him. The trial court expressly said it was relying on a combination of factors to find good cause to dismiss Juror No. 3. The trial court never stated that Juror No. 3's phone call alone would have provided such good cause. Indeed, only two jurors overheard the comment. Both said it did not affect their

11

impartiality.  A stray comment having no impact on deliberations does not rise to the level of misconduct sufficient to discharge a juror.  (See *People v. Jefflo* (1998) 63 Cal.App.4th 1314, 1329 [no showing juror's statement that jury was hung influenced verdict].)

In sum, the factors the trial court cited as grounds to discharge Juror No. 3 do not appear in the record as a demonstrable reality.  And because jurors referred to a difference of opinion between them and Juror No. 3, who it would thus appear was the lone holdout, it is reasonably probable a result more favorable to Cheatham would have been reached but for the error.  (See, e.g., *People v. Bowers*, *supra*, 87 Cal.App.4th at pp. 735–736.)  Reversal is therefore required.

## DISPOSITION

The judgment is reversed.  The matter is remanded for a retrial at the People's election.

NOT TO BE PUBLISHED.

DHANIDINA, J.

We concur:

LAVIN, Acting P. J.

EGERTON, J.